UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TODD ALBRIGHT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANT SPECIALTY INSURANCE SERVICES, INC., *et al.*,<br><br>Defendants. | CASE NO. 3:17-cv-05062-RBL<br><br>ORDER ON CROSS MOTIONS<br><br>[Dkt. #s 38, 71, 104] |

THIS MATTER is before the Court on Plaintiff Albright's Motion for Partial Summary Judgment on Choice of Law [Dkt. #38] and Defendants' Motion for Summary Judgment [Dkt. #71].

Albright is a Tacoma-based insurance broker and a Vice President of Illinois-based Arthur J. Gallagher Risk Management Services. He specializes in brokering insurance policies for Native American tribal entities in Oklahoma, Washington, and California. Defendant Jeff Martins is an Executive Vice President, and Defendant Robert Shearer is a Vice President, at Defendants Alliant Specialty Insurance Services, Alliant Insurance Services, and Tribal First (collectively, "Alliant"). Alliant has long competed with Albright in the specialized tribal insurance market.

Alliant had long-standing business relationships with two non-party insurance brokerages, Scott McCoy Insurance and Bomford Couch and Wilson. These relationships were governed by co-brokerage agreements (CBAs). McCoy also had a similar CBA with the Gallagher's Tacoma office (where Albright worked) and it shared with that office revenue it earned from Alliant accounts. However, Alliant did not allow Albright personally to work on any of its accounts.

In 2016, Gallagher acquired (or merged with; it is not clear) McCoy and Bomford. Gallagher and McCoy terminated their existing CBAs (including the one between McCoy and Gallagher Tacoma). Alliant similarly sought to enter new CBAs with McCoy and Bomford to govern their relationship going forward, apparently in light of those entities' new relationship with Gallagher. Shearer was charged with drafting new CBAs (one for McCoy and one for Bomford, though both were now part of Gallagher). He forwarded drafts to a group of high level Alliant, McCoy, Bomford, and Gallagher employees in three states (Washington, Oklahoma, Illinois, and California) for review.

The draft CBAs spelled out Alliant's continuing desire not to work with its competitor, Albright, even though it would continue to work with McCoy and Bomford:

> Broker agrees that it will assign only competent, licensed personnel to perform any direct or indirect work or services under this agreement. Broker understands and agrees that under no circumstances will it assign or allow Todd Albright to perform any task under this Agreement. Todd Albright is expressly precluded from representing Alliant, or any of its products, services, or trade names, including Tribal First, for any purpose whatsoever.

[Dkt. # 38 at page 3]

Albright obtained a copy of this draft at his Tacoma office. He complained to Gallagher's in-house counsel that the language defamed him. That attorney relayed these concerns to Alliant's counsel, and the final version of each CBA places the "Albright exclusion" several

paragraphs below the "licensed and competent" requirement. Albright concedes that the final version of the CBAs is not defamatory.

Nevertheless, Albright claims the damage was done. He sued Shearer, Martins[1], and Alliant for defamation and defamation per se. He claims the draft language defamed him, and that they damaged his reputation when they sent it to his peers, by implying that he is not licensed and not competent. He claims damage is presumed, but also claims he lost $12,500 he would have earned if he had not been excluded from some deals. Albright also asserts a tortious interference claim (alleging that Alliant interfered with his relationship with McCoy), and a sort of catch-all negligence claim, alleging that *someone* at Alliant had a duty to see that such drafts were not tortiously circulated, and they failed.

Defendants seek summary judgment on all of Albright's claims. They argue first that the statement was not defamatory, either on its face or by implication. It is instead a valid, additional requirement for those who can work on its accounts: the broker must be 1) competent, 2) licensed, and 3) not Todd Albright. Alliant argues that this does not imply that Albright is either unlicensed or incompetent[2]. They also argue that the draft language was privileged as a matter of law—they and those they sent it to have a common business interest in sharing information, and such communications are not defamatory as a matter of law (unless it is shared maliciously). Defendants also argue that the CBAs are not tortious because excluding a broker from working

---

[1] Albright claims Martins signed one of the draft CBAs on Alliant's behalf. Martins denies that he signed a CBA, and claims no knowledge of the CBAs or the language at issue. His signature does not appear on the draft in the record. Albright seems to suggest that Martins forged Shearer's signature on one of the CBAs, though he provides no evidence for this claim, and no explanation for why he would do so.

[2] It is at least as fair a reading that while Albright *is* both licensed and competent, he is nevertheless not authorized to work on his competitor's accounts.

on a certain account is not an improper conduct, an element of improper interference that Albright must establish. They claim Albright had no right to work on Alliant accounts and he only "lost" money they were never going to let him earn because of that exclusion, not because of draft contract language they once proposed using to implement that exclusion.

Albright argues that the common interest privilege extends only to members of a single corporate entity, and the draft CBAs are between three different corporate entities. He also claims he needs additional discovery into whether Defendants circulated the draft language maliciously. Albright further argues that pending depositions are likely to shed light on whether Defendants engaged in improper conduct, such as acting outside of industry norms with the intent to harm Albright, and thus summary judgment on his tort claims would be improper before further discovery.

Albright also filed his own summary judgment motion, asking the Court to determine as a matter of law that the laws of each of the states where Alliant forwarded the drafts—Illinois, California, and Oklahoma—apply to his defamation claims. He apparently seeks to recover punitive damages under the laws of the three non-forum states (punitive damages are not recoverable in Washington) but it is not clear why the Court would need to apply three (or four) sets of laws to these claims, and (other than punitive damage availability) Albright does not demonstrate that the choice of law is outcome determinative[3].

---

[3] The defendants argue that Washington's choice of law analysis is unlikely to lead to the application of four states' laws to one defamation claim. The Court tends to agree but because the communications were not unprivileged as a matter of law, there is no conflict and the Court need not address this issue.

Alliant claims that such a cumbersome choice of law analysis is unwarranted where the outcome in each case is the same: the communications were privileged and they were not defamatory as a matter of law.

## I. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

## B. Defamation Claims

Albright argues that the draft CBA language defamed him because it implied he is not a licensed and competent insurance broker. He asks the Court to determine that the draft CBAs were defamatory under the laws of each state where they were published—Oklahoma, Illinois, and California. Defendants argue that Albright cannot succeed on his defamation claims in any jurisdiction because the essential elements of a defamation (or defamation *per se*) claim are the same in each state and Albright cannot establish each element. Specifically, Albright must establish that the CBAs were unprivileged. Defendants argue that the CBAs are subject to the common interest privilege, as they are communications between parties with a shared pecuniary concern. Albright argues that the draft language was not privileged because the parties are not part of a single corporate entity.

In Washington, a plaintiff claiming defamation must show four essential elements: "falsity, an unprivileged communication, fault, and damages." *Mark v. Seattle Times*, 635 P.2d 1081, 1088 (Wash. 1981). To establish a claim of defamation *per se* the plaintiff must prove those same elements, except damages: "There are two meanings of the words 'per se' when used in defamation actions. These words may signify either (1) that the article is libelous on its face or (2) that it is actionable without proof of special damage." *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters*, 670 P.2d 240, 245 (Wash. 1983). Thus, a plaintiff can prevail on a defamation or defamation *per se* claim only if he can establish that the communication is not privileged.

The common interest privilege "arises when parties need to speak freely and openly about subjects of common organizational or pecuniary interest." *Moe v. Wise*, 989 P.2d 1148,

1155 (Wash. Ct. App. 1999). This "common interest privilege" will also defeat a plaintiff's defamation claim in Oklahoma[4], Illinois[5], and California[6].

Albright claims that the common interest privilege applies only to tenants in common, co-owners of land, and members of associations or partners. He relies on the Restatement (Second) of Torts § 596 cmt. d (1979): "Tenants in common and other co-owners of land . . . are . . . conditionally privileged . . . . So too, partners [and] fellow officers of a corporation . . . are similarly conditionally privileged." However, the Restatement does not limit common interest privilege to those situations: "Persons associated together in professional activities are likewise within the [common interest privilege]." *Id*. Indeed, the Restatement specifically cites a case recognizing a common interest privilege between a company and its customers. *Hahn v. Kotten*, 331 N.E.2d 713 (Ohio 1975).

Albright cites *Moe v. Wise*, 989 P.2d 1148 (Wash. Ct. App. 1999), for the proposition that "privilege is available generally for persons involved in the same organizations, partnerships, associations, or enterprises." *Id*. at 1155. But *Moe* recognized a common interest privilege between a bankrupt company and its creditors. It did not hold or suggest that only members of a

---

[4] In Oklahoma, a plaintiff must establish that a communication is unprivileged to prevail on a defamation or defamation *per se* claim. *See* 12 Okla. Stat. tit. 12, § 1441 (2015); *Peterson v. Grisham*, 594 F.3d 723, 728 (10th Cir. 2010) (a plaintiff pleading defamation *per se* must establish the same factors as she would in a defamation case, with the exception of special damages).

[5] In Illinois, a defamation plaintiff must similarly establish that a communication is unprivileged. *See Krasinski v. United Parcel Serv.*, 530 N.E.2d 468, 471 (Ill. 1988) (a defamation plaintiff must prove that the communication is unprivileged); *Solaia Tech., LLC v. Specialty Publ. Co.*, 852 N.E.2d 825, 842 (Ill. 2006) (A statement is not defamatory *per se* if it is privileged).

[6] In California, a claim for defamation or defamation *per se* can only prevail if the communication is unprivileged. *See* Cal Civ. Code §45; 68 Cal. Rptr. 224, 229 (Cal. Ct. App. 1968).

single entity have a common interest privilege in sharing information. The common interest privilege is similarly broad enough to cover communications between parties who are not in the same business in Oklahoma[7], Illinois[8], and California[9].

Communications among parties having a common business interest in the shared information are privileged and will not support a defamation claim, (unless they are made with actual malice). The draft CBA language shared among those with a common interest in the insurance business, and trying to formalize their agreement in writing, was privileged as a matter of law in each of the four states where the language was shared.

Albright claims that Defendants maliciously inserted the "Albright exclusion" into the draft CBAs. Malicious communications are not privileged. *Moe*, 989 P.2d 1148. To establish malice, Albright points to two instances of evidence of hostile feelings ("hate") toward him from an unrelated Alliant employee several years before the CBA language was drafted. (Dkt. #83 at Ex 10, 11). However, there is no evidence or inference that this non-party's animosity motivated Alliant to exclude Albright from its co-brokerage arrangements. Albright seeks additional time to find evidence of malice, but he has not suggested what evidence he seeks, or why it would support his claim of malice.

---

[7] In Oklahoma, a business relationship is enough to establish privilege: "'communications between persons who share a common business interest are qualifiedly privileged and not libelous in the absence of malice.'" *Thomas v. Pacificorp*, 324 F.3d 1176, 1180 (10th Cir. 2003) (citation omitted).

[8] In Illinois, the privilege inquiry focuses on "the common interest or concern of speaker and hearers . . . ." *Colson v. Stieg*, 433 N.E.2d 246, 253 (Ill. 1982).

[9] California recognizes privilege between two interested parties: "A privileged publication or broadcast is one made . . . (b) In a communication, without malice, to a person interested therein . . . by one who is also interested . . . ." Cal Civ. Code § 47.

The communications were privileged as a matter of law. Defendants' Motion for Summary Judgment on Albright's defamation and defamation *per se* claims **[Dkt. # 71] is GRANTED** and those claims are dismissed with prejudice.

Albright's Motion for Partial Summary Judgment on Choice of Law is moot, absent some demonstration that he could prevail on his claims under the laws of any of the laws he advocates. Because he must demonstrate that the communication was unprivileged in each of those states, his Motion for Partial Summary Judgment **[Dkt. # 38] is DENIED**.

## C. Tort Claims

### 1. Tortious Interference.

Albright claims that Defendants interfered in his existing business relationship with McCoy and his expected business relationship with Bomford by excluding him from work on Alliant accounts in the CBAs. Defendants argue that Albright cannot establish the improper conduct element of tortious interference, and that in any case his CBA with McCoy terminated because Gallagher acquired McCoy, not because of Alliant's draft language.

To prevail on a claim for tortious interference, a plaintiff must prove five elements: (1) a valid contractual relationship or business expectancy, (2) the defendant's knowledge of and intentional interference with that relationship or expectancy, (3) a breach of that relationship or expectancy induced or caused by the interference, (4) an improper purpose or the use of improper means by the defendant that caused the interference, and (5) damage arising from that breach. *Janaszak v. State*, 297 P.3d 723, 736 (Wash. Ct. App. 2013). "Interference is for an improper purpose if it is wrongful by some measure beyond the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *Newton Ins. Agency & Brokerage v. Caledonian Ins. Group*, 52 P.3d 30 (Wash. Ct. App. 2002). Improper interference applies in limited circumstances; "exercising in good faith

one's legal interests is not improper interference." *Schmerer v. Darcy*, 910 P.2d 498, 502 (Wash. Ct. App. 1996).

There is no evidence that the Defendants improperly interfered in Albright's business relationship or expectancy with Bomford or McCoy. Albright does not suggest that Defendants violated any law or regulation or even a business ethic or standard by excluding him from Alliant accounts. To the contrary, Defendants demonstrate that broker exclusions are common practice in the insurance industry. Albright again argues that pending depositions may reveal evidence that Albright's exclusion amounts to improper interference, but he again does not demonstrate what evidence he hopes to find or why he expects to find it, or why he thinks he can prove that excluding him was improper. Excluding a competitor is not generally tortious conduct, and there is no evidence supporting the claim that it was here.

Defendants' Motion for Summary Judgment on Albright's tortious interference claim **[Dkt. # 71]** is **GRANTED** and that claim is dismissed with prejudice.

**2. Negligence.**

Finally, Albright argues that one or more Defendants negligently failed in their duty to prevent the circulation of the draft CBAs. Defendants argue that Albright cannot establish any damages, an essential element of a negligence claim, caused by Alliant circulating the drafts.

A negligence claim can only succeed if a plaintiff can prove (1) the defendant owed him a duty, (2) the defendant breached that duty, and (3) that breach harmed the plaintiff. *Ranger Ins. Co. v. Pierce County*, 192 P.3d 886 (Wash. 2008).

Albright does not state what duty he believes Defendants have breached, nor the basis for any such duty. And, other than claiming he was defamed, he has not identified any breach. Albright has not cited a case holding or suggesting that a defamatory statement supports a negligence claim because one has a duty not to defame others. Albright's damages claim arises

entirely from the lost revenue-sharing with McCoy, but there is no evidence that that loss resulted from the CBAs. Indeed, that loss is attributable to Gallagher's acquisition of McCoy, which was completed before defendants drafted or circulated the CBA language.

Defendants' Motion for Summary Judgment on Albright's negligence claim **[Dkt. # 71] is GRANTED** and that claim is dismissed with prejudice.

Alliant's Pending Motion for a Protective Order **[Dkt. # 104] is DENIED** as moot.

The case is DISMISSED.

IT IS SO ORDERED.

Dated this 11th day of July, 2018.

_____
Ronald B. Leighton
United States District Judge